**Dated: February 05, 2018**
**The following is SO ORDERED:**

_____
David S. Kennedy
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

_____

**In re**
**Willie Earl West,**                                            Case No. 17-20506-K
**Debtor.**                                                     Chapter 7
**SSN: xxx-xx-6682**

_____

**Willie Earl West**
**Plaintiffs.**

vs.                                                             Adv. Proc. No. 17-00078-K

**United States Department of Education,**
**Defendant.**

_____

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT *AND* Plaintiff/DEBTOR'S CROSS MOTION FOR SUMMARY
JUDGMENT COMBINED WITH NOTICE OF THE ENTRY THEREOF**

_____

1

On January 18, 2017, the above-named debtor, Willie Earl West ("Debtor"), filed a Chapter 7 petition under the Bankruptcy Code; and on April 24, 2017, he filed this adversary proceeding against the above-named defendant, United States Department of Education ("DOE"), seeking a discharge under 11 U.S.C. § 523(a)(8) of a student loan owed to DOE. On November 11, 2017, DOE filed a motion for summary judgment pursuant to Fed. R. Bankr. P. 7056. Debtor responded on December 4, 2017 with his own motion for summary judgment. A hearing on the parties' cross motions was held on December 5, 2017, at which time Debtor, who is acting *pro se*, and counsel for DOE made thoughtful statements and arguments in support of their respective positions. This matter was taken under submission for further consideration. The following shall constitute the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

**Jurisdiction**

This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The Court has the statutory and constitutional authority to hear and determine this particular dischargeability proceeding. The parties have consented to the Court's jurisdiction.

**Background Facts**

When deciding a motion for a summary judgment, the Court considers the facts in the light most favorable to the non-moving party. In this instance, there appears to be little dispute as to the underlying facts, although the parties have a strong difference of opinion regarding the ultimate outcome on the merits.

Debtor is 60 years old and unemployed. He currently has no medical or physical issues which prevent him from working. Because he had given up hope for finding employment, he has not sought employment in five years. Debtor was last gainfully employed at Wesley Highland

retirement home around 1990. Debtor has a criminal background that he believes, when combined with his age and race, makes it impossible for him to find work.

Debtor's aunt owns a home in which she allows Debtor to live rent-free. Debtor receives Supplemental Nutrition Assistance Program ("SNAP") benefits in the amount of $194 per month for food. He is currently single and has no dependents. He has no other source of income.

Debtor was enrolled at the University of Memphis from 1999 to 2005 in the paralegal studies program. Debtor was only 8 to 10 hours from receiving his degree, but never finished the program due to a conflict that arose between himself and the university. To pay for his education, he received student loans from DOE. When this adversary proceeding was filed, the Debtor owed DOE the sum of $68,637.51.

Since 2005, the Debtor has entered several forbearance agreements with DOE which delayed the start of his payments. Debtor has never made a payment on his student loans owed to DOE.

DOE offers several repayment plans that are based on a borrower's income level. The Income Based Repayment ("IBR") program, for example, requires a payment of 15% of the borrower's discretionary income each month. After 25 years of qualifying payments, a borrower's entire remaining balance is forgiven.

DOE offered the Debtor an IBR plan that would require a monthly payment of $0. Debtor rejected this option.

## Discussion

**I.    Summary Judgment Standard**

Fed. R. Bankr. P 7056, which incorporates Fed. R. Civ. P. 56, provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any

3

material fact and that the movant is entitled to judgment as a matter of law." To meet this burden, the moving party may rely on any of the evidentiary sources listed in Rule 56(c) or on the failure of the nonmoving party to produce more than a mere scintilla of evidence that would create a genuine dispute for the jury. *Leary v. Daeschner*, 349 F.3d 888, 896-97 (6th Cir. 2003). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party; if the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251-52.

It is not sufficient simply to show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The facts must provide more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson*, 477 U.S. at 252. Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**II.     Undue Hardship and The *Brunner* Test**

Section 523(a)(8) of the Bankruptcy Code provides that "an educational . . . loan made . . . by a governmental unit" is exempt from discharge unless it "would impose an undue hardship on the debtor and the debtor's dependents." In *Olyer v. ECMC*, the Sixth Circuit adopted a three-part test (the *Brunner* test) for determining if an undue hardship exists. 397 F.3d 385 (citing

4

*Brunner v. New York Higher Educ. Servs. Corp.*, 831 F.2d 395 (2nd Cir. 1987)). The *Brunner* test requires the Debtor to prove 1) he cannot maintain a minimal standard of living if forced to repay the loans, 2) it is likely that the situation will persist for a significant portion of the repayment period, and 3) a good faith effort was made to repay the loans.

1. <u>Can Debtor Maintain a Minimal Standard of Living if Forced to Repay the Loan?</u>

Considering the first prong of the *Brunner* test, DOE argues that the Debtor's monthly payment would be $0 and thus would have no impact on his ability to maintain a minimal standard of living. Because anyone can afford a $0 per month payment without affecting that person's standard of living, DOE argues that Debtor cannot satisfy the first prong of *Brunner*.

The Court is not sufficiently persuaded at this time by this line of reasoning. If the first prong of the *Brunner* test automatically prevents any debtor who qualifies for a $0 per month payment from discharging a student loan, then 11 U.S.C. § 523(a)(8) would seemingly act as a complete bar to discharging student loans for those debtors in the worst position. For an extreme example, a hypothetical debtor with no arms, no legs, and the inability to speak would also, presumably, qualify for a $0 per month payment, which would mean that under DOE's theory, he could not discharge his loans. Instead, he would have to wait 25 years for them to be forgiven. Then, since the IRS treats this loan forgiveness as taxable income, he would find himself owing the IRS. And because the interest continues to accrue, and even capitalizes after a certain point, under IBR, he very well could owe the IRS more than the original student loan. Now, this particular debtor, instead of having a student loan that the Bankruptcy Code allows to be discharged for "undue hardship," would have a debt to the IRS that the Bankruptcy Code <u>never</u> allows to be discharged.

5

While DOE cites several non-binding cases that do hold that the first prong of the *Brunner* test requires considering the amount of the monthly payment, this Court believes the analysis of the Sixth Circuit Court of Appeals in *Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett)* is more relevant here. 487 F.3d 353 (6th Cir. 2007). That case considered whether the third prong of *Brunner* required enrollment in an income-contingent repayment plan. Here DOE is essentially arguing that the first prong of *Brunner* has such a requirement, but the Court believes the Sixth Circuit's reasoning applies equally well, regardless of which prong it is being applied to.

> Although ECMC doesn't state so explicitly, its position would create a per se rule requiring enrollment in the ICRP [income-contingent repayment plan] to satisfy the third *Brunner* prong and thus would, in effect, eliminate the discharge of student loans for undue hardship from the Bankruptcy Code.
>
> We have already rejected ECMC's per se position. *See Tirch*, 409 F.3d at 682 (noting that a debtor's decision not to enroll in ICRP is "not a *per se* indication of a lack of good faith"). Moreover, Congress recently enacted "the most sweeping reform of bankruptcy law since the enactment of the Bankruptcy Code in 1978." Yet Congress left § 523(a)(8)'s "undue hardship" language intact. Had Congress intended participation in the ICRP -- implemented in 1994 -- to effectively repeal discharge under § 523(a)(8), it could have done so. In addition, requiring enrollment in the ICRP runs counter to the Bankruptcy Code's aim in providing debtors a "fresh start." The debtor is encumbered with the debt for an additional twenty-five years, regardless of the length of the student loans. If, at the end of the twenty-five years, the debtor has been unable to repay all the student loans, the remaining debt is canceled and that discharge of indebtedness is treated as taxable income. The result, as the bankruptcy court noted, would be that Barrett would "be trading one nondischargeable debt for another."

*Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett)*, 487 F.3d 353, 364 (6th Cir. 2007).

Because a debtor's student loan payment is based off the debtor's discretionary income, the monthly payment will essentially always be low enough not to prevent the debtor from maintaining a minimal standard of living. Therefore, under DOE's interpretation of the *Brunner* test, no debtor would ever qualify to discharge his student loans. But as the Sixth Circuit pointed

out in *In re Barrett*, Congress knew of these programs when it reformed the Bankruptcy Code in 2005 and choose allow debtor's in certain circumstances to discharge student loans. 487 F.3d at 364.

The *Brunner* test has been heavily criticized and can be difficult to apply. *See, for example and among others, Long v. Educ.Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554 (8th Cir. 2003); *Nash v. Conn. Student Loan Found.*, 330 B.R. 323, 326 (D. Mass. 2005); *Bender v. Educ. Credit Mgmt. Corp. (In re Bender)*, 297 B.R. 126, 131 (D. Neb. 2003); *United Student Aid Funds v. Pena (In re Pena)*, 207 B.R. 919, 922 (B.A.P. 9th Cir. 1997). Following the *Brunner* test in a rigid matter can restrict the Court's ability to apply 11 U.S.C. § 523(a)(8). However, because the *Brunner* test is the standard adopted by the Sixth Circuit, this court must apply it. That being said, the *Brunner* test must be applied in a fashion that is in line with the intentions of Congress as the Sixth Circuit made clear in *In re Barrett*. 487 F.3d at 364.

The Court believes the appropriate analysis for the first prong of the *Brunner* test is not limited to a debtor's monthly payment, but, instead, is based on the entire impact the student loan will have on a debtor's ability to maintain a minimal standard of living. So, while it is true that Debtor in this case can afford to make a $0 per month payment, that is not where the analysis ends. The Court must also consider Debtor's ability to maintain a minimal standard of living during the entire duration of the loan.

This question may sound similar to the second prong of the *Brunner* test, but there is a subtle difference. The second prong asks the Court to consider if the Debtor's situation is likely to persist, but what the Court is considering in the first prong is how will the student loan impact Debtor's standard of living over the life of the loan.

7

While Debtor will have no problem making a $0 per month payment during the lifetime of the student loan, when the loan is forgiven, Debtor will suddenly find himself with a non-dischargeable tax liability in the tens of thousands of dollars. 11 U.S.C. § 523(a)(1). There is no provision in the Bankruptcy Code that will allow Debtor to discharge such a tax liability. Given that Debtor will be in his 80s when this tax liability arises, his employment prospects will likely be worse than they are today. Debtor will find himself in the situation of having to satisfy another creditor who (a) does not have the same type of programs that DOE has and (b) is completely exempt from discharge. Debtor may, in fact, be in a worse situation than he is now. Since Debtor is unable to make the current payments on the student loans (the Court is unclear on what the actually monthly payment is at the moment, but it is certainly more than $0), it is highly likely that he will be unable to make the monthly payment on a similar liability owed to the IRS 25 years from now.

DOE states that after 25 years on IBR, the Debtor can seek a waiver of tax forgiveness of the debt. It states that the IRS accepts insolvency as a reason for such a waiver. The Court believes that forcing a debtor into IBR and telling him that there is a chance that there will be no tax consequences in 25 years undermines and frustrates the aim of the Bankruptcy Code to provide honest but unfortunate debtors with a fresh start. *See In re Barrett* 487 F.3d at 364. DOE cannot guarantee that Debtor will face no tax consequences even if he finds himself in the same situation he is now; it merely states that Debtor "would likely prevail" in such an application. But, as the last few months have proven, tax laws can change dramatically, especially over 25 years. Debtor's situation also may change. In fact, that is the goal of receiving a fresh financial start in bankruptcy. In short, DOE's assertion that Debtor may be able to avoid any tax consequences 25 years in the future is simply too speculative to force Debtor into IBR.

Because there is no genuine issue of fact as to the first prong of the *Brunner* test, and Debtor has shown that he cannot maintain a minimal standard of living if the student loan survives discharge, the Court will grant summary judgment as to the first prong of the *Brunner* test in Debtor's favor.

2. <u>Is the Situation Likely to Persist for a Significant Portion of the Repayment Period?</u>

The second prong of the *Brunner* test is an exacting standard and difficult to satisfy as the Sixth Circuit noted:

> To demonstrate that the debtor's current "state of affairs is likely to persist for a significant portion of the repayment period of the student loans," as required by *Brunner*'s second prong, the debtor must precisely identify her problems and explain how her condition would impair her ability to work in the future. The dischargeability of loans should be based upon "a certainty of hopelessness, not merely a present inability to fulfill financial commitment."

*In re Tirch*, 409 F.3d 677, 681 (6th Cir. 2005)(internal citations omitted).  DOE argues that Debtor's lack of work is by his own choice.  Specifically, DOE repeatedly points to the fact that by his own admission, Debtor has not looked for work in the past 4 to 5 years.

In his "Cross Motion for Summary Judgment and Response in Opposition to Defendant's Motion for Summary Judgment" (Dkt. 17), Debtor states his "prospects for finding a job are slim to none" because he faces "discrimination based on age and race and criminal record."  DOE argues that Debtor has provided no evidence that this is true.  The Court disagrees.  Actually, Debtor, himself, orally testified that he searched for a job for years and was continually turned down.  He stated, among other things, that he went door-to-door, up and down Poplar and Union Avenues in Memphis, Tennessee seeking work to no avail.

It is true that, at this time, the Debtor has offered no evidence to support his claim other than his own testimony.  However, the Debtor's testimony about his own experiences should not

9

be ignored at this time. Whether the Debtor's testimony is credible enough to make a finding that a "certainty of hopelessness" exists is a question of material fact and is thus inappropriate to determine on summary judgment.

DOE states in its post-trial brief (Dkt. 21) that the federal government has numerous programs for individuals with criminal records. However, DOE has provided no actual evidence that these programs exist and that the Debtor would qualify for them.

The Court believes that the Debtor has provided more than a scintilla of evidence that his situation carries a "certainty of hopelessness" and that a reasonable jury could make such a finding. However, it is inappropriate for the Court to make such a finding on a motion for summary judgment. Therefore, considering all of the foregoing, both motions for summary judgment will be denied as to the second prong of the *Brunner* test.

### 3. Has a Good Faith Effort Been Made to Repay the Loans?

In its post-trial brief (Dkt. 21), DOE continually states that the Debtor has failed to make a single payment on his student loans. At one point, DOE even suggests that the Debtor should have paid using odd jobs Debtor says he does here and there for $10 or $15. Of course, the Debtor would have to do hundreds of these jobs per month to earn enough off of which to live. Even with Debtor's aunt supporting him, the Court finds it hard to believe that DOE would suggest that Debtor could have paid his student loans by doing odd jobs here and there for $10 or $15 apiece. To do enough of those jobs to pay DOE a meaningful payment on $60,000 worth of loans would have been the equivalent of the Debtor starting his own business and being moderately successful at it.

Additionally, DOE's apparent outrage over the Debtor's failure to make a single payment towards his student loan neglects the fact that DOE entered into forbearance agreements with

Debtor. That means that the Debtor was not obligated to make payments on the student loan during the periods of those agreements. Just as the Court holds debtors to the terms of their bargains (unless the Bankruptcy Code says otherwise), so too does it hold creditors to the terms of theirs. Seeking and obtaining forbearances is relevant to the good faith analysis. *See Nixon v. Key Educ. Res. (In re Nixon)*, 453 B.R. 311, 334 (Bankr. S.D. Ohio 2011).

Ultimately, the good faith analysis boils down to this: were the Debtor's actions while attempting to repay his loan reasonable? Certainly, staying in touch with DOE and entering into forbearance agreements was reasonable. Not making a payment on the loans over a ten-year period is also reasonable if the Debtor had no money to pay the loan with and such a lack of money was no fault of his own. It is this last inquiry where the Court takes pause.

Debtor states he spent years looking for work and has been unemployed for nearly 30 years now. Debtor also states that he has not seriously looked for work in the past four or five years, because he has essentially given up any hope of finding employment. Did the Debtor exhaust all avenues that might have led to gainful employment? That is a question of fact that is inappropriate for determination on summary judgement. Therefore summary judgment on the third prong of the *Brunner* test will be denied.

## CONCLUSION

Accordingly, IT IS ORDERED AND NOTICE IS HEREBY GIVEN that:

1. Debtor's Motion for Summary Judgment is **GRANTED IN PART** solely as to the first prong of the *Brunner* test**.**

2. Debtor's Motion for Summary Judgment is **DENIED IN PART** as to the second and third prongs of the *Brunner* test

3. The Department of Education's Motion for Summary Judgment is **DENIED**.

4. A pretrial conference will be held in this § 523(a)(8) adversary proceeding on February 12, 2018, at 10:00 a.m. in United States Bankruptcy Court, Courtroom No. 945, 200 Jefferson Ave., Memphis, Tennessee.

5. The Bankruptcy Court Clerk shall cause a copy of this Memorandum, Order, and Notice of the entry thereof to be sent to the following:

>   Willie Earl West
>   *Pro Se Plaintiff*
>   3612 Buffalo Rd.
>   Memphis, TN 38109
>
>   Barbara Zoccola, Esq.
>   *Attorney for DOE*
>   Assistant United States Attorney
>   167 N. Main, Ste. 800
>   Memphis, TN 38103